STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-218

HELEN VICE PALOMBO AND FRANCIS C. PALOMBO, SR.

VERSUS

FRANK BACQUE, M.D., ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2001-2336
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of John D. Saunders, Elizabeth A. Pickett, and James T. Genovese, Judges.

AFFIRMED.

John A. Bivins
Roy, Bivins, Judice, Roberts & Wartelle
P. O. Drawer Z
Lafayette, LA 70502
Counsel for Defendant/Appellee:
        Our Lady of Lourdes Regional Medical Center, Inc.

Alan K. Breaud
Timothy W. Baden
Breaux & Meyers
P. O. Drawer 3448
Lafayette, LA 70502
Counsel for Defendant/Appellee:
        William Dedo, M.D.

Mel L. Credeur
Attorney at Law
P. O. Box 51867
Lafayette, LA 70505-1867
Counsel for Plaintiffs/Appellants:
        Helen Vice Palombo and
        Francis C. Palombo, Sr.

**Pickett, J.**

The plaintiffs, Helen Vice Palombo and Francis C. Palombo Sr., appeal a judgment of the district court granting a motion for summary judgment filed by the defendants, Dr. William Dedo and Our Lady of Lourdes Regional Medical Center (OLOL), dismissing their suit for damages arising out of an alleged incident of medical malpractice. We affirm the judgment of the district court.

## FACTS

This case was previously before this court. We quote from the court's prior unpublished opinion:

> Helen Vice Palombo underwent a surgical procedure conducted by Dr. [Frank] Bacque [a urologist] at Our Lady of Lourdes Medical Center (OLOL) in Lafayette, Louisiana. Palombo and her husband, Francis C. Palombo, allege that Mrs. Palombo began having back and leg problems after the accident as a result of improper positioning during surgery. The Plaintiffs brought the matter before a medical review panel which found that the evidence did not support the conclusion that Dr. Bacque failed to meet the appropriate standard of care. The Palombos then filed suit against Dr. Bacque, Dr. William Dedo, and OLOL.
>
> Dr. Bacque filed a motion for summary judgment asserting that the plaintiffs had not produced any competent expert testimony to establish a breach of the standard of care. In response to the motion, the plaintiffs submitted the affidavit of Dr. Jawad Hasnain, an anesthesiologist. The trial court granted Dr. Bacque's motion finding that Dr. Hasnain is not qualified to testify as to the standard of care for a urologist, with respect to surgical positioning and repositioning.

*Palombo v. Bacque*, an unpublished opinion bearing docket number 03-7 (La.App. 3 Cir. 4/30/03), 844 So.2d 429, *writ denied*, 03-1550 (La. 10/3/03), 855 So.2d 314.. In that proceeding, which bears the same district court number as the case before us, we affirmed the judgment of the trial court. It should be noted that we had the record of that proceeding returned to this court from the Louisiana State University Law Library archives and considered it in our decision herein.

1

The case continued and, in due course, the remaining defendants, Dr. Dedo and OLOL, filed motions for summary judgment alleging, that on the basis of the pleadings, depositions, and evidence, there is no genuine issue of material fact and that the defendants are entitled to summary judgment as a matter of law. The trial court granted the motions and this appeal followed.

## LAW AND DISCUSSION

In *P.G. Diners, Inc. v. CAT Scale Co.*, 04-757 (La.App. 3 Cir. 11/10/04), 886 So.2d 1253, this court set forth a detailed analysis of the law applicable to summary judgments and the appellate review thereof:

> This court reviews summary judgments de novo applying the same criteria as the district court in determining whether summary judgment is appropriate. *Schroeder v. Bd. of Supervisors of La. State Univ.*, 591 So.2d 342 (La.1991). In *Babin v. Winn-Dixie Louisiana, Inc.*, 00-0078, pp. 3-4 (La.6/30/00), 764 So.2d 37, 39-40, the Louisiana Supreme Court addressed the conditions under which summary judgment should be granted as follows:
>
>> A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ. P. art. 966(B). This article was amended in 1996 to provide that "summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action ... The procedure is favored and shall be construed to accomplish these ends." La.Code Civ. P. art. 966(A)(2). In 1997, the legislature enacted La.Code Civ. P. art. 966(C)(2), which further clarified the burden of proof in summary judgment proceedings, providing:
>>
>>> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action,

2

or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

This amendment, which closely parallels the language of *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), first places the burden of producing evidence at the hearing on the motion for summary judgment on the mover (normally the defendant), who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent's case. At that point, the party who bears the burden of persuasion at trial (usually the plaintiff) must come forth with evidence (affidavits or discovery responses) which demonstrates he or she will be able to meet the burden at trial. See MARAIST AND LEMMON, LOUISIANA CIVIL LAW TREATISE: CIVIL PROCEDURE, § 6.8 (1999). Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. *Hardy v. Bowie*, 98-2821 (La.9/8/99), 744 So.2d 606; *Hayes v. Autin*, 96-287 (La.App. 3d Cir.12/26/96), 685 So.2d 691, *writ denied*, 97-0281 (La.3/14/97), 690 So.2d 41.

Additionally, in *King v. Stranco, Inc.*, 00-2003, 00-2004, p. 4 (La.App. 1 Cir. 11/9/01), 818 So.2d 48, 50-51, the first circuit explained:

The amended LSA-C.C.P. art. 966 brings Louisiana's standard for summary judgment closely in line with the federal standard under Fed.R.Civ.P. 56(c). *Independent Fire Ins. Co. v. Sunbeam Corp.*, 99-2181, 99-2257, p. 7 (La.2/29/00), 755 So.2d 226, 231, *quoting Hardy v. Bowie*, 98-2821, p. 5 (La.9/8/99), 744 So.2d 606, 610. The federal standard was summarized by the fourth circuit in *Huber v. Liberty Mut. Ins. Co.*, 2000-0679, p. [7] (La.App. 4th Cir.2/7/01), 780 So.2d 551, 555:

Under Fed.Rule Civ.Proc. 56, when the nonmoving party bears the burden of proof at trial, there is no genuine

issue of material fact if the nonmoving party cannot come forward at the summary judgment stage with evidence of sufficient quantity and quality for a reasonable juror to find that the party can satisfy his substantive evidentiary burden. In construing the federal summary judgment rule, the United States Supreme Court held that summary judgment shall be granted where the evidence is such that it would require a directed verdict for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If a defendant in an ordinary civil case moves for summary judgment or a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the non-moving party on the evidence presented. *Id.* The *Anderson* court further held that the mere existence of a scintilla of evidence on the non-moving party's position would be insufficient; there must be evidence on which the jury could reasonably find for that party. In *Lujan v. National Wildlife*, 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), the court held that Fed.Rule Civ.Proc. 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof. *Berzas v. OXY USA, Inc.*, 29,835 (La.App. 2 Cir. 9/24/97), 699 So.2d 1149, 1152-53; *Martello v. State Farm Fire and Cas. Co.*, 96-2375 (La.App. 1 Cir. 11/7/97), 702 So.2d 1179, 1183-84[, *writ denied*, 98-0184 (La.3/20/98), 715 So.2d 1215].

*P.G. Diners, Inc.*, 886 So.2d at 1254-55.

Inasmuch as this is a medical malpractice case, "the plaintiffs have the burden of proving the applicable standard of care, the physician's breach of the applicable standard of care, and the causal connection between the breach and the resulting injuries." *Edwards v. Raines*, 35,284, p. 5 (La.App. 2 Cir. 10/31/01), 799 So.2d 1184, 1187. In *Edwards* the court went on to state the following:

One of the essential elements of a medical malpractice action is that the plaintiff establish that the conduct of the defendant fell below the applicable standard of care. *Hinson v. Glen Oak Retirement Home,*

4

34,281 (La.App. 2 Cir. 12/15/00), 774 So.2d 1134.  The opinion of the Medical Review Panel may be considered by the court when ruling on a summary judgment motion.  *Id.*, at 1137.  *Hinson* also holds that a favorable affidavit by the treating physician and a favorable opinion by the Medical Review Panel are sufficient to establish an absence of factual support for the plaintiff's claims.  774 So.2d at 1137.

*Id.*

This case was originally submitted to a Medical Review Panel consisting of Drs. Deborah Kennedy, Scott M. Neusetzer, and John Martin.  On February 1, 2001, the panel issued a unanimous opinion which stated in part:

> There is no evidence in the medical records that standard of care was not maintained in the positioning and surgical management of her disease.  Furthermore, the administration of epidural and general anesthesia represents the highest level of anesthetic care and post-operative pain management.

> The findings present throughout the spine represent chronic degenerative changes.  Those findings are not attributable to an acute process specifically epidural anesthesia or surgical positioning.

In the case before us, the plaintiffs fail to carry their burden of proof on two issues: first, that the conduct of any of the defendants fell below the standard of care; and, second, that any action or inaction by any of the defendants resulted in a specific injury to Mrs. Palombo.  Since these two issues are so entwined, we will discuss them together.

The record fails to demonstrate either defendant breached their standard of care.  The only "proof" the plaintiffs offer in their attempt to raise a genuine issue of material fact on the standard of care issue are the two affidavits of Dr. Jawad Hasnain.  Dr. Hasnain's affidavits are based solely upon his review of Mrs. Palombo's medical records; he did not physically examine her.  In one affidavit he concludes that Dr. Dedo failed to met the required standard of care in the placement of the epidural catheter and that Drs. Dedo and Bacque and the staff at OLOL failed to adhere to the

5

standard of care in positioning and repositioning Mrs. Palombo, causing injuries to her vertebral column and nerve system. In the other affidavit Dr. Hasnain makes the same allegations except he omits any allegations of improper placement of the epidural catheter. In neither affidavit does Dr. Hasnain state just how the defendants allegedly breached the standard of care nor does he allege Mrs. Palombo was improperly padded. In the second affidavit, without explanation of the evidence he relied upon, Dr. Hasnain concludes, "they placed her in such a position that it changed the natural configuration of her body so severely that it overstretched same and caused injury to her." Furthermore, Dr. Hasnain fails to state in either affidavit, specifically what injury Mrs. Palombo allegedly sustained by the alleged improper positioning and/or repositioning. Both of his affidavits were executed well before any of the defendants filed motions for summary judgment. They were considered and rejected by the court in the motion for summary judgment filed by Dr. Bacque. Additionally, Dr. Hasnain's affidavits fail to cite any portion of the medical records of Drs. Robert Martinez, J. Bob Blacklock, or Stephen Goldware, the records he allegedly relied upon to reach his conclusion, to support his opinion that the defendants breached the standard of care.

The operative report of Mrs. Palombo's surgery states that "[s]he was . . . placed very carefully in the left flank position. The kidney rest was raised. She was supported both in her axilla and in her legs. Everything was padded. She was on a bean bag . . . ." At the end of the first procedure the operative report states: "[a] very nice incision closure was done and . . . she was then turned to the supine position, reprepped, [and] redraped . . . ." The report concludes: "[t]he patient went to the

6

recovery room awake and in good condition." There is nothing in the report to suggest even the hint of any problem.

Although Mrs. Palombo alleges she started experiencing leg pain while still in the hospital and reported this to Dr. Bacque at that time and upon her second post-operative visit, we find no proof of these allegations in the record. Dr. Bacque released her to return to work on December 21, 1998. Two days later, she saw Dr. Dedo in the course of her employment and made the first documented complaint of weakness in her left leg. Dr. Dedo referred her to Dr. Robert Martinez, a neurologist, who is now deceased.

Dr. Martinez saw Mrs. Palombo on January 14, 1999. In his report to Dr. Dedo, Dr. Martinez states that he is "not sure what is going on with her left leg at this point." He felt that her complaints warranted further investigation and MRI and EMG studies. He referred her to Dr. Stephen Goldware, a neurosurgeon.

In the interim, she had a nerve conduction study performed by Dr. James N. Domingue, a neurologist. The results of this study were normal.

Dr. Goldware initially saw the patient on January 29, 1999. In his notes on her visit on February 23, 1999, he noted that "[t]he MRI of February 3, 1999 shows a degenerative cyst at L5-6 on the left. I think that is responsible for her pain" and recommended surgery at her earliest possible convenience because of her complaints. Mrs. Palombo refused the surgery and sought a second opinion.

This second opinion was obtained from Dr. J. Bob Blacklock, a neurosurgeon, at the Baylor College of Medicine in Houston, Texas. All of the patient's medical studies from OLOL had been forwarded to Dr. Blacklock. Her initial evaluation was

7

performed on September 2, 1999. Dr. Blacklock's "Chart Note" of September 22, 1999 states as follows (emphasis ours):

> Regarding the spine, these films have been further reviewed. *The abnormality at L5 appears to simply be a degenerative process; possibly a cyst* or possibly no real abnormality at all as it is only seen in one particular image. The bone scan is felt to most likely be *degenerative* uptake at L5. the thoracic study shows some disc herniations in the mid and upper thoracic spine, but *there is no compression at any level.*

> At this point we do not have an explanation for her gait failure.

Clearly, none of these doctors related Mrs. Palombo's complaints to her surgery in October of 1998.

Furthermore, the record contains the depositions of two of the doctors on the Medical Review Panel. In his deposition, Dr. Scott Neusetzer, a urologist, and a member of the Medical Review Panel, stated:

> [M]y interpretation of how she was positioned and the findings on her MRIs regarding her spine in particular suggested that there was no change in her spine, and any changes that she had appeared to be of a somewhat chronic nature and therefore would not have arisen from her surgical positioning.

Dr. John Martin, an anesthesiologist, and another member of the Medical Review Panel stated: "The findings present throughout the spine represent chronic degenerative changes. Those findings are not attributable to an acute process, specifically epidural anesthesia or surgical positioning."

Considering the record as a whole, we find that the defendants " point[ed] out to the court . . . an absence of factual support for one or more elements essential to the [plaintiffs'] . . . claim . . . [and that] the adverse party fail[ed] to produce factual support sufficient to establish that [they] w[ould] be able to satisfy [their] evidentiary burden of proof at trial." Hence, we find there is no genuine issue of material fact and that the defendants are entitled to summary judgment as a matter of law.

8

Accordingly, for the reasons stated, the judgment of the trial court is affirmed. All costs of this appeal are assessed against the plaintiffs, Helen V. Palombo and Francis C. Palombo.

**AFFIRMED.**