# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 13-845

JANIE LEJEUNE

VERSUS

**LOUISIANA MEDICAL MUTUAL INS. CO., ET AL.**

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20115671
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

**********

## JOHN E. CONERY
## JUDGE

**********

Court composed of Marc T. Amy, Billy Howard Ezell, and John E. Conery, Judges.

**AFFIRMED.**

**AMY, J., concurs and assigns reasons.**

**EZELL, J., dissents.**

Michael W. Adley
Judice & Adley (A Professional Law Corporation)
Post Office Drawer 51769
Lafayette, Louisiana 70505-1769
(337) 235-2405
COUNSEL FOR DEFENDANTS/APPELLEES:
    Louisiana Medical Mutual Ins. Co.
    Thad Bourque, M.D.

**R. Scott Iles**
**Post Office Box 3385**
**Lafayette, Louisiana 70502**
**(337) 234-8800**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Janie Lejeune**

**CONERY, Judge.**

Janie Lejeune appeals a trial court's grant of summary judgment in favor of Dr. Thad Bourque and Louisiana Medical Mutual Insurance Company. Mrs. Lejeune filed suit against Dr. Bourque for medical malpractice alleging that Dr. Bourque breached the standard of care in his treatment of her deceased husband, Joseph Lejeune. Defendants moved for summary judgment and filed an affidavit containing the opinion of the medical review panel stating that Dr. Bourque's treatment of Mr. Lejeune was appropriate and that he did not breach the standard of care for a urologist. The trial court found that Mrs. Lejeune failed to offer proper expert testimony to controvert the expert opinion of the medical review panel (MRP) and granted summary judgment dismissing her claim with prejudice at her cost. For the following reasons, we affirm.

## FACTS

After seeking treatment for blood in his urine with Dr. Kent Humble, Mr. Lejeune was referred to Dr. Thad Bourque, a urologist. Dr. Bourque first saw Mr. Lejeune on August 28, 2008. Dr. Bourque ordered testing, and a CT scan revealed a seven centimeter mass on Mr. Lejeune's right kidney that appeared to affect the fatty tissue on the edge of the kidney capsule itself. On September 17, 2008, a right radical nephrectomy was performed, removing the kidney and the surrounding fat tissue. Mr. Lejeune was discharged from the hospital on September 21, 2008, and seen in Dr. Bourque's office for a post-surgical visit on September 25, 2008.

At the September 25, 2008 office visit, Dr. Bourque observed that Mr. Lejeune's liver enzymes normalized after surgery. The surgical pathology report dated September 18, 2008, indicated that the "MARGINS OF EXCISION FREE

OF TUMOR." Dr. Bourque further noted that Mr. Lejeune had an increased risk of recurrence of cancer since the tumor was Grade 4 and had extended into the fatty tissue on the edge of the kidney capsule. In his deposition testimony, Dr. Bourque discussed the implications of Mr. Lejeune's increased risk of cancer in relation to the surgery he had just performed removing Mr. Lejeune's right kidney and the fatty tissue surrounding it. First, he did not obtain an oncology consult after the surgery "because, typically they do not give chemotherapy without the presence of visible residual disease, either local or metastatic." Second, when questioned if he presumed all the cancer cells had been removed with the surgical procedure, Dr. Bourque responded, "[S]aying that I got all the cancer is not something that anybody can say." Dr. Bourque also testified that removing the tumor and finding it did not "go to or through the margins" lead him to believe "the local tumor was resected completely," and no other cancerous lesions were detected elsewhere in Mr. Lejeune at that time. The pathology report confirmed his opinion. Due, however, to the increased risk of recurrence of the cancer, Dr. Bourque wanted to follow Mr. Lejeune quarterly and continue to conduct testing which included a chest x-ray, CMP, and CBC. [1]

Mr. Lejeune returned for a follow-up visit with Dr. Bourque on October 30, 2008. Dr. Bourque ordered and reviewed the recommended series of testing on Mr. Lejeune. The testing revealed the following as per Dr. Bourque's testimony, "[t]he chest x-ray didn't show any signs of recurrence. His CBC showed normal white blood count and hemoglobin levels with no acute infection." There was no

---

[1] A Comprehensive Metabolic Panel (CMP) is a group of fourteen tests designed to give a health care provider current status of the kidneys and liver. A Complete Blood Count (CBC) gives information about the numbers of cells in the blood, especially the red and white blood cells and platelets.

mention in Dr. Bourque's deposition testimony about the CMP results. By the time of this visit, Mr. Lejeune had started to gain weight. Dr. Bourque once again noted that Mr. Lejeune had a high grade tumor removed and was to be watched closely for possible recurrence. Dr. Bourque's notes indicated that Mr. Lejeune should return in three months and he scheduled a follow-up appointment for him on January 22, 2009.

Dr. Bourque's office notes indicate that in the interim, Mr. Lejeune came to his satellite office in Opelousas on the morning of December 8, 2008, asking to see Dr. Bourque because he was concerned that his cancer may have returned due to the fact that he was experiencing swelling again. Mr. Lejeune asked whether there was a blood test Dr. Bourque could order to check the problem. Dr. Bourque was not in the Opelousas office on December 8, 2008, but was consulted by phone about the request by his nurse, Nancy Major. After speaking with Dr. Bourque, Nurse Major called Mr. Lejeune and relayed Dr. Bourque's advice that Mr. Lejeune should see his family physician, Dr. Mark Dawson, who could address the problem. Mr. Lejeune was already scheduled for follow-up testing on January 22, 2009, with Dr. Bourque. The documentation of the conversation indicates that Mr. Lejeune responded that he would call Dr. Dawson to schedule an appointment in the morning. The medical records contained in the record on appeal do not contain any documentation that Mr. Lejeune did follow-up with Dr. Dawson.

Mr. Lejeune returned to see Dr. Bourque for his regularly scheduled appointment on January 22, 2009. Dr. Bourque noted that Mr. Lejeune's weight was stable and that he would watch Mr. Lejeune closely for possible recurrence of the high grade tumor. The same testing was ordered and reviewed by Dr. Bourque. The chest x-ray was negative or normal. The CBC showed no signs of infection

3

and his blood counts were a little lower than the time before. His CMP, or metabolic panel, showed a high blood sugar level and his overall kidney function was a bit elevated, which was not unexpected due to his age (seventy-four) and his having only one kidney.

Dr. Bourque wanted to see Mr. Lejeune in three months, as indicated on his office summary of the January 22, 2009 visit. For some unknown reason, the appointment was scheduled for six months later. Dr. Bourque testified in his deposition that he had wanted to see Mr. Lejeune every three months and could not explain why an appointment was scheduled for July 23, 2009. Dr. Bourque offered that it might be possible that he wrote six months on the charge ticket, or that the scheduling person scheduled it for six months instead of three.

Mr. Lejeune did not return for treatment with Dr. Bourque, but continued to treat with his family physician, Dr. Dawson. He presented to Dr. Dawson on three occasions in June 2009—6/17, 6/23, and 6/30. On each of these office visits he complained of a cough and a shortness of breath. A chest x-ray on June 18, 2009 revealed bilateral pneumonia with cardiomegaly, an enlarged heart. The chest x-ray of June 30, 2009, revealed a suspicious white spot on the left, pleural effusion on the right and cardiomegaly. The Brain Natriuretic Peptide (BNP) was normal, indicating no heart failure and there was no increase in his white blood cell count. Dr. Dawson noted no acute distress or respiratory distress, and his assessment was DOE (dyspnea, or shortness of breath on exertion), with abnormal chest x-ray. Dr. Dawson then ordered a repeat chest x-ray with a PA view, in which the x-ray beams pass from back to front.

On July 1, 2009, Mr. Lejeune's condition worsened and at the request of Dr. Dawson he presented to the emergency room for possible pneumonia versus

4

pleural effusion. Dr. Dawson also recommended a pulmonologist consult. Mr. Lejeune was subsequently admitted to Our Lady of Lourdes Regional Medical Center. After extensive testing, an oncologist, Dr. Joseph E. Brierre, was consulted and on July 2, 2009, Dr. Brierre diagnosed Mr. Lejeune with metastatic lung disease related to his previously diagnosed renal cell carcinoma. Dr. Brierre recommended a trial of chemotherapy as an outpatient in the Church Point area.

After his discharge from Our Lady of Lourdes Regional Medical Center, Mr. Lejeune was admitted to Ochsner Baptist Hospital in New Orleans on July 8, 2009, where further testing revealed that the cancer had also metastasized in his brain. Mr. Lejeune died on July 29, 2009.

On July 21, 2009, prior to Mr. Lejeune's death, Dr. Bourque's office called the Lejeunes to remind them of Mr. Lejeune's appointment scheduled for July 23. Dr. Bourque's office notes indicate that Mrs. Lejeune informed them that she was disappointed with the service they had received because Dr. Bourque had refused to see Mr. Lejeune a month after his last visit. However, the medical records from Dr. Bourque's office do not contain any such calls. Mrs. Lejeune told them that Mr. Lejeune was going to Ochsner Baptist Hospital for treatment of cancer of the brain.

After her husband's death, Mrs. Lejeune filed a claim with the Louisiana Patient's Compensation Fund. A unanimous MRP found that Dr. Bourque met the applicable standard of care in his treatment of Mr. Lejeune. Mrs. Lejeune then filed suit against Dr. Bourque and his insurer. In her suit, Mrs. Lejeune sued for damages for the wrongful death of her husband and for the loss chance of survival of her husband as a result of the alleged substandard medical care received by Dr.

5

Bourque. She also asked for survival damages for his pain and suffering prior to his death.

In response to the suit, the Defendants filed a motion for summary judgment alleging that Mrs. Lejeune could not present any competent expert evidence indicating that Dr. Bourque breached the applicable standard of care for a urologist and/or that any alleged breach caused damages. A hearing on the motion was held almost a year later on December 17, 2012, after discovery had been completed. After the hearing, the trial court gave Mrs. Lejeune thirty days to submit an affidavit of a physician indicating that Dr. Bourque breached the standard of care in his treatment of Mr. Lejeune.

The next hearing was held on February 19, 2013. After reviewing the evidence submitted by Mrs. Lejeune, which consisted of an affidavit and what was purported to be an attached narrative by an oncologist, not a urologist, the trial court granted the Defendants' motion for summary judgment, finding that the affidavit submitted by Mrs. Lejeune did not provide the evidence necessary to defeat summary judgment. Mrs. Lejeune then timely filed the present appeal.

### ASSIGNMENT OF ERROR

(1)     THE TRIAL COURT ERRED IN GRANTING THE DEFENDANT DOCTOR'S MOTION FOR SUMMARY JUDGMENT.

### LAW AND DISCUSSION

*Standard of Review*

Summary judgments are reviewed de novo, applying the same standard to the matter as that applied by the trial court. *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La. 7/5/94), 639 So.2d 730. Summary judgment is favored by law and provides a vehicle by which the just, speedy, and inexpensive determination of

an action may be achieved. La.Code Civ.P. art. 966(A)(2). The trial court is required to render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B)(2).

In 1997, the legislature enacted La.Code Civ.P. art. 966(C)(2), which clarified the burden of proof in summary judgment proceedings. The initial burden of proof remains with the mover to show that no genuine issue of material fact exists. If the mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that a genuine material factual issue remains. *Id.* "[T]he failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion." *Hutchinson v. Knights of Columbus, Council No. 5747,* 03-1533, p. 6 (La. 2/20/04), 866 So.2d 228, 233 (citing *Hardy v. Bowie,* 98-2821, pp. 4-5 (La. 9/8/99), 744 So.2d 606, 609-10).

When a motion for summary judgment is made and supported, the adverse party may not rest on the allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. La.Code Civ.P. art. 967(B). "A fact is 'material' when its existence or nonexistence may be essential to [a] plaintiff's cause of action under the applicable theory of recovery. *Smith,* 639 So.2d at 751. "[F]acts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." *Id.* (quoting *S. La. Bank v. Williams,* 591 So.2d 375, 377 (La.App. 3 Cir. 1991), *writ denied,* 596 So.2d 211 (La.1992)).

7

In determining whether a fact is material, we must consider the substantive law governing the litigation. *Davenport v. Albertson's, Inc.,* 00-685 (La.App. 3 Cir. 12/6/00), 774 So.2d 340, *writ denied*, 01-73 (La. 3/23/01), 788 So.2d 427. Our supreme court in *Johnson v. Morehouse Gen. Hosp.,* 10-387, 10-488, pp. 10-11 (La. 5/10/11), 63 So.3d 87, 95-96 (footnote omitted), stated:

> When a medical malpractice action is brought against a physician, the plaintiff must establish the standard of care applicable to the physician, a violation of that standard of care by the physician, and a causal connection between the physician's alleged negligence and the plaintiff's resulting injuries. *See* La.R.S. 9:2794(A); *Schultz v. Guoth,* 10–0343 (La.1/19/11), 57 So.3d 1002; *Pfiffner v. Correa,* 94–0924 (La.10/17/94), 643 So.2d 1228,1233. … Expert testimony is generally required, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony. *Schultz, supra; Samaha v. Rau,* 07–1726 (La.2/26/08), 977 So.2d 880, 883.

Louisiana Revised Statutes 9:2794(A) provides in pertinent part:

> A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq. … the plaintiff shall have the burden of proving:
>
> (1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, … licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians…within the involved medical specialty.
>
> (2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
>
> (3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

Briefly stated, the plaintiff's burden of proof in a medical malpractice action requires the plaintiff to present evidence to establish the applicable standard of care,

a breach of that standard of care, and a causal connection between the breach and the injury. La.R.S. 9:2794(A); *Pfiffner v. Correa*, 94-0924 (La.10/17/94), 643 So.2d 1228.

In support of his motion for summary judgment, Dr. Bourque submitted into evidence the unanimous opinion of the MRP. A panel of this court, in the case of *Palombo v. Bacque*, 06-218, pp. 4-5 (La.App. 3 Cir. 5/31/06), 931 So.2d 1226, 1230, *writ denied*, 06-1698 (La. 10/6/06), 938 So.2d 82, applied the findings of the second circuit in the case of *Edwards v. Raines*, 35,284, p. 5 (La.App. 2 Cir. 10/31/01), 799 So.2d 1184, 1187, which held:

> One of the essential elements of a medical malpractice action is that the plaintiff establish that the conduct of the defendant fell below the applicable standard of care. *Hinson v. Glen Oak Retirement Home*, 34,281 (La.App. 2 Cir. 12/15/00), 774 So.2d 1134. The opinion of the Medical Review Panel may be considered by the court when ruling on a summary judgment motion. *Id.*, at 1137. *Hinson* also holds that a favorable affidavit by the treating physician and a favorable opinion by the Medical Review Panel are sufficient to establish an absence of factual support for the plaintiff's claims. 774 So.2d at 1137.

In this case, the unanimous opinion of the MRP in this case stated, in pertinent part:

> It is the opinion of the Medical Review Panel that the Defendant, DR.THAD BOURQUE did not deviate from the standard of care which is required of health care providers, of the same specialty, for the following reason:
>
> > All medical care provided by DR. THAD BOURQUE was appropriate and met the acceptable standards of care.

In opposition to the motion for summary judgment, Mrs. Lejeune introduced the affidavit of Dr. Mohamed B. Elmongy, a hematologist and oncologist, who treated Mr. Lejeune at Ochsner Baptist Hospital. The affidavit states in its entirety:

> BEFORE ME, the undersigned authority, a Notary Public in and for the above County and State, personally came and appeared DR. MOHAMED B. ELMONGY, M.D., hematologist and oncologist,

9

who after being duly sworn did depose and state that the attached narrative report is a true and correct reflection of his opinions regarding the care and treatment rendered in the above captioned matter related to Joseph Lejeune, Jr. both before receiving Mr. Lejeune as a patient, as well as the limited care that could be offered regarding Mr. Lejeune after he became my patient.

Attached to Dr. Elmongy's affidavit was an unsigned and undated narrative to Mrs. Lejeune's attorney and unauthenticated documents which were purported to be clinical practice guidelines for an oncologist, not a urologist. The unsigned and unauthenticated narrative stated in pertinent part:

> Because the patient is listed as having high grade tumor which indicated that he is at high risk of tumor recurrence, he could have referred him to an Oncologist specialist to evaluate him and might be able to offer him clinical trial for adjuvant treatment for high risk renal cell carcinoma.

Louisiana Code of Civil Procedure Article 967 states that an affidavit submitted in opposition to a motion for summary judgment must meet the following standards:

> A. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. The supporting and opposing affidavits of experts may set forth such experts' opinions on the facts as would be admissible in evidence under Louisiana Code of Evidence Article 702, and shall show affirmatively that the affiant is competent to testify to the matter stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits.

> B. When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.

Mrs. Lejeune argues that the trial court erred in granting summary judgment by dismissing her expert's testimony because he is an oncologist and not a urologist. She argues that when disciplines overlap because of a particular medical event, the standard of care in question is the needed focus of the court, not the nature of the specialty itself.

"[A] specialist in one field can give expert testimony regarding the standard of care applicable to those areas of practice that are common to both disciplines." *Smith v. Clement*, 01-87, p. 5 (La.App. 3 Cir. 10/3/01), 797 So.2d 151, 156, *writs denied*, 01-2878, 01-2982 (La. 1/25/02), 807 So.2d 249, 843. Pursuant to La.R.S. 9:2794(D)(3), "a specialist's knowledge of the requisite subject matter, rather than the specialty or subspecialty within which the specialist practices, determines whether a specialist may testify as to the degree of care which should be exercised." *Harper v. Minor*, 46,871, p. 9 (La.App. 2 Cir. 2/1/12), 86 So.3d 690, 696, *writs denied*, 12-524, 12-528 (La. 4/27/12), 86 So.3d 629, 632.

The trial court, in its colloquy with counsel at the hearing on the motion for summary judgment, did not discount the affidavit of Dr. Elmongy on the basis his specialty was oncology and not urology. The trial court stated, "doctors in urology and radiology [oncology] ought to be able to talk about the same kind of care for cancer patients and whatever else." The trial court, however, found that Dr. Elmongy's opinion, even assuming it was in proper affidavit form, was not sufficient to defeat the motion for summary judgment and stated:

> And I said to you, okay, if your guy tells me enough to make me comfortable that he's comfortable with the standard of care and that if he is that he then can tell me in his opinion that there was a breach of standard of care. So guess what your guy does? He convinces me enough that he's okay, but he doesn't give me an opinion that makes me comfortable in not granting a motion for summary judgment….

11

His affidavit says that - -here we go. That because the patient is listed as having a high grade tumor which indicated that he is at high risk of tumor recurrence, he could have referred him to an oncologist specialist to evaluate him and might be able to offer him clinical trial for adjuvant treatment for high risk renal cell carcinoma….

THE COURT: Could have is my concern.

A *de novo* review of Dr. Elmongy's affidavit reveals that it does not meet the requirements of La.Code Civ.P. art. 967. The narrative attached to the affidavit stated the conclusion that Dr. Bourque *could have* referred Mr. Lejeune to an oncologist for an evaluation and he *might have* been included in a clinical trial. The trial judge found that this statement was not sufficient to defeat summary judgment, and we agree.

Moreover, this "opinion" was not contained within the affidavit, but in an unsigned and undated narrative to Mrs. Lejeune's counsel. Louisiana Code of Civil Procedure Article 967 requires attachments referred to in an affidavit to be "[s]worn or certified copies." As such, the narrative attached to the affidavit is not in proper form. Even were it to be considered, the affidavit also fails to correlate Dr. Elmongy's expertise in oncology with Dr. Bourque's expertise in urology and fails to state that Dr. Elmongy is familiar with the standard of care required for urologists. Additionally, there is no mention that any of the alleged treatment or alleged lack of follow-up by Dr. Bourque was a breach of the standard of care of a urologist, or was causally connected to Mr. Lejeune's death.

We agree with the trial court that plaintiff did not properly controvert the findings of the MRP. We further find that even were we to consider the unsigned and unauthenticated attachment to Dr. Elmongy's affidavit, no genuine issue of material fact was presented sufficient to defeat defendants' summary judgment motion.

12

## DISPOSITION

For the foregoing reasons, we affirm the trial court's grant of summary judgment in favor of Dr. Thad Bourque and Louisiana Medical Mutual Insurance Company. Costs of this appeal are assessed to Janie Lejeune.

**AFFIRMED.**

NUMBER 13-845

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

JANIE LEJEUNE

VERSUS

LOUISIANA MEDICAL MUTUAL INSURANCE COMPANY, ET AL.

AMY, J., concurring.

I agree that an affirmation is appropriate in this case. Simply, the plaintiff's expert's affidavit, even upon consideration of the attached narrative report, fails to address the standard of care owed by a urologist in this instance, the breach of that standard of care, or that such a breach caused the plaintiff's death. Further, as remarked upon by the trial court and by the lead opinion, the expert failed to correlate his own area of medical expertise with that of the defendant physician. Accordingly, I find that the trial court appropriately granted the motion for summary judgment.