# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 13-1093

**MICHELLE DORE REINKE**

**VERSUS**

**DR. STANLEY KORDISCH, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2012-4421
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN E. CONERY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of J. David Painter, Phyllis M. Keaty, and John E. Conery, Judges.

**AFFIRMED.**

**Donald Carl Hodge, Jr.**
**Attorney at Law**
**2258 Belfield Road**
**Lake Charles, Louisiana  70806**
**(337) 794-8873**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
      **Michelle Dore Reinke**

**Kurt Stephen Blankenship**
**Attorney at Law**
**3421 North Causeway Boulevard, 9th Floor**
**Metairie, Louisiana  70002**
**(504) 831-4091**
**COUNSEL FOR DEFENDANT/APPELLEE:**
      **Women & Children's Hospital**

**Amanda Bensabat**
**Blue Williams, LLP**
**3421 North Causeway Boulevard, Suite 900**
**Metairie, Louisiana  70002**
**(504) 831-4091**
**COUNSEL FOR DEFENDANT/APPELLEE:**
      **Women & Children's Hospital**

**Ryan M. Goudelocke**
**Durio, McGoffin, Stagg**
**Post Office Box 51308**
**Lafayette, Louisiana  70505-1308**
**(337) 233-0300**
**COUNSEL FOR DEFENDANT/APPELLEE:**
      **Dr. Stanley Kordisch**

**CONERY, Judge.**

This medical malpractice action was filed on behalf of Michelle Dore Reinke ("Ms. Reinke") against Dr. Stanley Kordisch and Women and Children's Hospital in Lake Charles, Louisiana.[1] The trial court granted Dr. Kordisch's motion for summary judgment dismissing Ms. Reinke's claim on the basis that she failed to submit an expert medical opinion to support the claim that a breach of the standard of care caused her injury. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Ms. Reinke was thirty-two years old in 2010 when Dr. Kordisch suggested and performed a laparoscopic hysterectomy with an evaluation of the ovaries. Ms. Reinke had previously undergone three cesarean sections with live births, tubal ligation, gallbladder surgery, and laparoscopy of a right hemorrhagic ovarian cyst.

On June 15, 2010, Ms. Reinke and Dr. Kordisch discussed her wish to have her ovaries removed. Dr. Kordisch explained the risks of undergoing what is termed a supracervical hysterectomy and bilateral salpingo-oophorectomy. Those risks included infection, injury to nearby structures, puncture of the bowel or blood vessel requiring abdominal irrigation, an operation to correct injury, damage to a major blood vessel, hemorrhage, severe loss of blood, and the need for transfusions.

After Dr. Kordisch explained the risks of the surgical procedure, Ms. Reinke elected to proceed and signed the required consent forms, acknowledging that the upcoming procedure had been fully explained to her, along with the hazards and risks of proceeding with the surgery. Ms. Reinke's signature on the consent form

---

[1] On June 21, 2013, the trial court granted Women and Children's unopposed motion for summary judgment, which dismissed Women and Children's with prejudice at plaintiff's costs.

was witnessed by Loretta Reed, an office clerk, and was also signed by Dr. Kordisch.

Ms. Reinke underwent the scheduled procedure on June 16, 2010. Although there was some "immediate significant bleeding" in Ms. Reinke's lower left quadrant, Dr. Kordisch was able to control the bleeding problem and her hysterectomy proceeded without further problems. Prior to completing the surgery, Dr. Kordisch rechecked the area of the left inferior epigastic artery, which he suspected was the source of the initial bleeding problem, and found it completely hemostatic, or no longer bleeding.

Ms. Reinke was transferred to the post-anesthesia care unit at 10:08 a.m., but continual problems with blood loss resulted in a series of infusions, occasioned by her below normal hemoglobin and hematocrit ("H & H"), an indication of lack of red blood cells. Ms. Reinke was administered one unit of packed red blood cells intended to fight anemia and support perfusion, which means to supply oxygen and nutrients to the organs or tissues. After the PRBC infusion, Ms. Reinke's vital signs improved by 11:20 a.m. A second unit of PRBC was begun at 11:46 a.m. Dr. Kordisch checked on Ms. Reinke at 12:01 p.m. and found her resting quietly. At 3:20 p.m., Dr. Carole Altier ordered that Ms. Reinke be transferred to the intensive care unit (ICU).

Dr. Kordisch was paged at 4:15 p.m. and arrived shortly thereafter to check Ms. Reinke's vital signs, which were now stable. He also requested a consult from Dr. Prashant Khetpal, a hospitalist, and ordered a third unit of packed red blood cells and repeat H & H testing following the infusion, and another H & H the following morning.

2

On June 16, 2010, Dr. Khetpal visited Ms. Reinke at 6:30 p.m. and found her improved and asymptomatic except for post-surgery pain. At 8:00 p.m., her H & H had improved but were still low, and her white blood count, although improved, was still elevated. Dr. Kordisch saw Ms. Reinke at 9:25 p.m. and ordered that the bandage on the lower right quadrant be changed and began treating her with prophylactic cefoxitin, an antibiotic.

On June 17, 2010, Dr. Kordisch saw Ms. Reinke at 5:47 a.m. and found that her H & H levels had decreased to critically low levels. He ordered two more units of packed red blood cells. A CT scan showed pelvic hematoma, but there was no evidence of heavy bleeding, so he planned to watch her carefully and wait for any remaining bleeder, a blood vessel cut during surgery, to coagulate. This plan was discussed with Ms. Reinke's family on the morning of June 17, 2010.

By 9:09 a.m. on June 17, 2010, Ms. Reinke's H & H had increased, but by 5:34 p.m. it had once again dropped. Both Dr. Kordisch and Dr. Khetpal were notified, and Dr. Khetpal ordered another unit of packed red blood cells, which coupled with an additional unit given overnight, had failed to raise Ms. Reinke's H & H levels by 6:31 a.m. on June 18, 2010.

However, by 10:30 a.m. on June 18, 2010, Ms. Reinke felt better and had no dizziness or fever and her pain was well controlled, with occasional cramps. Dr. Khetpal continued to closely monitor Ms. Reinke and planned to discontinue the infusions, as per Dr. Kordisch orders. Her H & H levels remained stable until late in the day when at 9:30 p.m. Dr. Kordisch was notified that Ms. Reinke's H & H levels had dropped sharply.

Dr. Kordisch then ordered two more units of packed red blood cells for Ms. Reinke and an additional four units in preparation for surgery, which began at

11:50 p.m. Dr. Kordisch encountered much clotted blood, but also some fresh blood from arterial bleeders in the left lower quadrant. He was unable to stem the bleeding and enlisted the help of general surgeon Dr. Richard Shimer. Together they were able to control the bleeding. Dr. Kordisch also sutured in several drains before concluding the surgery.

At 3:09 a.m. Ms. Reinke's blood pressure and H & H were still low, and Dr. Kordisch ordered two more units of packed red blood cells. Ms. Reinke continued to have difficulty maintaining blood pressure. Coupled with the still low H & H, Drs. Kordisch and Shimer decided to return her to surgery at 4:15 a.m. This time, an exploratory laparotomy revealed "a little arterial bleeding," which they were able to control. By 4:40 a.m. Ms. Reinke's hemoglobin had returned to normal and her hematocrit and white blood count were near normal.

Still concerned that some bleeding might reoccur as Ms. Reinke's blood pressure began to return to normal levels, Dr. Kordisch asked Dr. Baron Newton, a vascular surgeon, to conduct an exploratory laparotomy. Thus, for the last time Ms. Reinke went back into surgery on June 19, 2010 at 8:40 a.m. No specific bleeding site could be identified, but after Dr. Newton ligated the left internal iliac artery, "the oozing was much less" and Ms. Reinke's blood pressure remained stable throughout the procedure.

After the last procedure, Ms. Reinke's H & H remained low and Dr. Newton ordered a transfusion of both packed red blood cells and fresh frozen plasma. Ms. Reinke's abdomen was draining fluid, but it did not show any evidence of active intra-abdominal bleeding, and it was Dr. Newton's opinion that some slow oozing remained but that there was no active intra-abdominal bleeding. Dr. Newton

4

planned to continue supportive transfusions and close monitoring of Ms. Reinke's laboratory work.

After the final surgery and over the next two days, Ms. Reinke's condition continued to improve. Her H & H and blood pressure returned to normal levels and by June 21, 2010, her abdominal drainage had decreased dramatically and the transfusions were terminated. Ms. Reinke left the ICU on June 23, 2010, and she was discharged from the hospital on June 26, 2010. She continued treatment with Dr. Kordisch and home health care.

On or about May 3, 2011, in accordance with La.R.S. 40:1299.47, Ms. Reinke filed a complaint of medical malpractice against Dr. Kordisch and Women and Children's Hospital. Ms. Reinke requested a medical review panel ("MRP") which was composed of three physicians, Drs. Ewelina Griffin of Baton Rouge, Monique Monteilh of Lafayette, and Rebecca Boudreaux of Baton Rouge. The MRP reviewed Ms. Reinke's complaint, and on July 25, 2012, the panel issued an opinion, unanimously finding that, based on the evidence presented, neither Dr. Kordisch or Women and Children's Hospital breached their standard of care to Ms. Reinke.

On October 23, 2012, Ms. Reinke timely filed suit, claiming medical malpractice by Dr. Kordisch and Women and Children's Hospital. On January 8, 2013, both Dr. Kordisch and Women and Children's Hospital filed motions for summary judgment on the grounds that Ms. Reinke had no expert testimony to support her claim as required by La.R.S. 9:2794(A). In support of their motions for summary judgment, both Dr. Kordisch and Women and Children's Hospital relied on the opinion of the medical review panel that neither had breached the standard of care to Ms. Reinke.

A hearing was held on June 21, 2013, at which time Ms. Reinke voluntarily dismissed with prejudice, Women and Children's Hospital. A judgment reflecting same was signed in open court and is not subject to this appeal.

In support of his motion, Dr. Kordisch submitted into evidence all attachments to his motion for summary judgment, which included the unanimous "Findings Of The Medical Review Panel," and the affidavit of Dr. Monique Monteilh, a member of the MRP, affirming that opinion, along with a certificate of enrollment for Dr. Kordisch in the Patient's Compensation Fund. In opposition to the motion, Ms. Reinke offered her memorandum in opposition and the affidavit of Ms. Reinke. [2]

After hearing argument from counsel, the trial court issued oral reasons granting Dr. Kordisch's motion for summary judgment on the basis that Ms. Reinke failed to produce expert medical testimony to refute the opinion of the medical review panel and specifically finding that *res ispa loquitur* was not applicable to the facts of this case. A judgment reflecting the trial court's ruling dismissing Ms. Reinke's claim against Dr. Kordisch with prejudice was also signed in open court on June 21, 2013. It is from this judgment that Ms. Reinke timely appeals.

## ASSIGNMENT OF ERROR

1. The trial court erred in granting the Motion for Summary Judgment.

---

[2] The trial court was aware of Ms. Reinke's memorandum in opposition and the affidavit of Ms. Reinke, which was received into evidence without objection. However, in the preparation of the record, it was determined by the Calcasieu Clerk of Court that the opposition memorandum had not been filed, and thus is not a part of the record on review.

## LAW AND DISCUSSION

### *Standard of Review*

Summary judgments are reviewed *de novo*, applying the same standard to the matter as that applied by the trial court. *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La. 7/5/94), 639 So.2d 730. Summary judgment is favored by law and provides a vehicle by which the just, speedy, and inexpensive determination of an action may be achieved. La.Code Civ.P. art. 966(A)(2). The trial court is required to render summary judgment if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B).

In 1997, the legislature enacted La.Code Civ.P. art. 966(C)(2) which clarified the burden of proof in summary judgment proceedings. The initial burden of proof remains with the mover to show that no genuine issue of material fact exists. If the mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that a material factual issue remains. "[T]he failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion." *Hutchinson v. Knights of Columbus, Council No. 5747*, 03-1533, p. 6 (La. 2/20/04), 866 So.2d 228, 233 (citing *Hardy v. Bowie,* 98-2821, (La. 9/8/99), 744 So.2d 606).

When a motion for summary judgment is made and supported, the adverse party may not rest on the allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. La.Code Civ.P. art. 967(B). A fact is material when its existence or nonexistence may be essential to a

plaintiff's cause of action under the applicable theory of recovery. *Penalber v. Blount*, 550 So.2d 577, 583 (La.1989). "[F]acts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." *Smith,* 639 So.2d at 751 (quoting *S. La. Bank v. Williams,* 591 So.2d 375, 377 (La.App. 3 Cir. 1991), *writ denied,* 596 So.2d 211 (La.1992)).

In determining whether a fact is material, we must consider the substantive law governing the litigation. *Davenport v. Albertson's, Inc.,* 00-685 (La.App. 3 Cir. 12/6/00), 774 So.2d 340, *writ denied*, 01-73 (La. 3/23/01), 788 So.2d 427. Our supreme court in *Johnson v. Morehouse General Hospital,* 10-387, pp. 10-11(La. 5/10/11), 63 So.3d 87, 96, stated:

> When a medical malpractice action is brought against a physician, the plaintiff must establish the standard of care applicable to the physician, a violation of that standard of care by the physician, and a causal connection between the physician's alleged negligence and the plaintiff's resulting injuries. *Schultz v. Guoth,* 10–0343 (La.1/19/11), 57 So.3d 1002; *Pfiffner v. Correa,* 94–0924 (La.10/17/94), 643 So.2d 1228, 1233 . . . Expert testimony is generally required, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony. *Schultz, supra; Samaha v. Rau,* 07–1726 (La.2/26/08), 977 So.2d 880, 883.

Louisiana Revised Statutes 9:2794(A) provides in pertinent part:

> A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq. . . . the plaintiff shall have the burden of proving:

> (1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, . . . licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of

medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians . . . within the involved medical specialty.

(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.

(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

Briefly stated, the plaintiff's burden of proof in a medical malpractice action requires the plaintiff to present evidence to establish the applicable standard of care, a breach of that standard of care, and a causal connection between the breach and the injury. La.R.S. 9:2794; *Pfiffner*, 643 So.2d 1228.

In support of his motion for summary judgment, Dr. Kordisch submitted into evidence the unanimous opinion of the MRP. This circuit in the case of *Palombo v. Bacque*, 06-218 (La.App. 3 Cir. 5/31/06), 931 So.2d 1226, *writ denied*, 06-1698 (La. 10/6/06), 931 So.2d 1226, applied the findings of the second circuit in the case of *Edwards v. Raines*, 35,284, p. 5 (La.App. 2 Cir. 10/31/01), 799 So.2d 1184, 1187, which held:

> One of the essential elements of a medical malpractice action is that the plaintiff establish that the conduct of the defendant fell below the applicable standard of care. *Hinson v. Glen Oak Retirement Home*, 34,281 (La.App. 2 Cir. 12/15/00), 774 So.2d 1134. The opinion of the Medical Review Panel may be considered by the court when ruling on a summary judgment motion. *Id.*, at 1137. *Hinson* also holds that a favorable affidavit by the treating physician and a favorable opinion by the Medical Review Panel are sufficient to establish an absence of factual support for the plaintiff's claims. 774 So.2d at 1137.

In this case, the unanimous opinion of the MRP stated in pertinent part:

> Reasons as to Dr. Stanley Kordisch: This was a difficult procedure. The patient was appropriately consented for the procedure.

9

She experienced a known complication which was specifically addressed in the consent.

Dr. Kordisch promptly recognized the complication and followed the patient very closely. He took appropriate steps to address the complication and repair it. This resulted in his consultation with a vascular surgeon who made the final repair.

Although, this was a difficult course for the patient, the panel finds that Dr. Kordisch met the standard of care in this matter.

In an abundance of caution, Dr. Kordisch also submitted into evidence the affidavit of Dr. Monteilh, a member of the MRP, which confirmed the panel's unanimous determination of Dr. Kordisch's care of Ms. Reinke, which also stated in pertinent part:

That said Medical Review Panel's Opinion was that the evidence did not support the conclusion that Dr. Stanley Kordisch failed to comply with the appropriate standard of care as charged in the Complaint, and was reached only after consideration of all of the evidence submitted by the parties hereto. Said written Opinion accurately expresses the opinion that Dr. Stanley Kordisch did not breach the applicable standard of care.

In opposition to the motion for summary judgment, Ms. Reinke argued the application of *res ispa loquitor* as discussed by the supreme court in *Pfiffner*. Ms. Reinke's opposition was her affidavit, which as previously indicated was introduced into evidence at the hearing but never properly filed in the record before this court.

Although the record is incomplete for a *de novo* review by this court, the trial court specifically addressed the application of *res ispa loquitor* to this case and found it did not fall into the category of cases as envisioned by *Pfiffner*. The trial court found that Ms. Reinke would be unable to sustain her burden of proof at trial pursuant to La.R.S. 9:2794 without the testimony of a physician within Dr. Kordisch's medical specialty. We agree. The trial court in its oral reasons stated as follows:

10

The matter before the Court concerns complications that apparently, at least on what's been presented, were made aware to the plaintiff. The plaintiff suffered said complications, and at this point no medical testimony has come forward to indicate that the activities were negligent in some form or fashion within that medical specialty.

It does not appear to this Court that that is something that is obvious on its surface that a layperson could determine negligence from the mere acts. There's also been arguments with regard to res ipsa, but this does not appear to be a matter that would fall within res ipsa, even though it was argued on occasion.

At this time I do find that the plaintiff will not be able to satisfy their burden based on the presentation. There is no genuine issue of material fact at this time. And without any expert testimony to the contrary, the Court would grant the motion for summary judgment dismissing the allegations against Dr. Kordish (sic) at cost to plaintiff.

In the face of trial court's finding that medical expert testimony would be required for Ms. Reinke to establish her burden of proof at trial, any statements made in her affidavit would not be sufficient to defeat summary judgment in this medical malpractice action. *Venable v. Dr. X*, 95-1634 (La.App. 3 Cir. 4/3/96), 671 So.2d 1249.

## DISPOSITION

For the foregoing reasons, the judgment of the trial court granting the motion for summary judgment on behalf of Dr. Stanley Kordisch and dismissing the claims of Michelle Dore Reinke is affirmed. All costs of this appeal are assessed against Michelle Dore Reinke.

**AFFIRMED.**

11