# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 17-818


**JUSTIN THOMAS**

**VERSUS**

**OTIS RASHAD DREW, M.D., ET AL.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20164528
HONORABLE JULES DAVIS EDWARDS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**BILLY HOWARD EZELL**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Billy Howard Ezell, and D. Kent Savoie, Judges.

**Cooks, J., concurs and assigns written reasons.**


**AFFIRMED.**

**Patrick Daniel**
**Daniel & Associates, LLC**
**2409 Commerce St.**
**Houston, TX 77003**
**(713) 589-3539**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
**Justin Thomas**

**Ryan M. Goudelocke**
**Durio, McGoffin, Stagg & Ackermann**
**P. O. Box 51308**
**Lafayette, LA 70505-1308**
**(337) 233-0300**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Otis Rashad Drew, M.D.**

**Richard S. Crisler**
**Bradley Murchison Kelly & Shea**
**1100 Poydras St., #2700**
**New Orleans, LA 70163-2700**
**(504) 596-6300**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Bryan Baudoin, D.O.**

**EZELL, Judge.**

Justin Thomas appeals a trial court judgment which granted summary judgment in favor of Dr. Otis Drew and dismissed him from this medical malpractice case. Mr. Thomas alleged that Dr. Drew failed to properly monitor him post-operatively, resulting in his early release and subsequent overdose causing Mr. Thomas to lapse into a coma. Mr. Thomas claims the trial court erred in finding that his expert affidavit was inadmissible and failed to create a genuine issue of material fact.

## FACTS

On June 20, 2013, Dr. Drew examined Mr. Thomas. Mr. Thomas was eighteen years old at the time and complaining of repeated dislocations of his right shoulder. Dr. Drew noted that Mr. Thomas liked to work out heavily and planned on performing heavy labor. Mr. Thomas was also thinking about going into the armed services. His pain was a six out of ten. An MRI indicated an anterior, inferior, and posterior glenolabral injury. After examination, Dr. Drew recommended therapy as a first option and surgery as a second option. Mr. Thomas wanted to proceed with the surgery.

The pre-admit process was performed on June 28, 2013. It was noted that the surgery would take one to two hours, including anesthesia time and that Mr. Thomas was a smoker on rare occasions. Mr. Thomas denied any health issues. It was also noted that he had never had anesthesia.

On July 1, 2013, Mr. Thomas was admitted to Lafayette Surgicare at 7:35 a.m. for an outpatient right shoulder arthroscopy with SLAP and Bankart repair for painful rotator cuff syndrome. Surgery began at 8:49 a.m. and ended at 11:13 a.m. His parents were notified at 10:15 a.m. of the progress in surgery.

Before the procedure, Mr. Thomas was administered an interscalene nerve block of 100 mg Ropivicaine. In conjunction with the block, he was administered 2 mg of Versed, 100 mcg of Fentanyl and 100 mg of Propofol.

Medications Mr. Thomas received during surgery while under anesthesia included 2 mg of Midazolam, 100 mcg of Fentanyl, and 200 mg of Propofol. He was also dispensed 4 mg of Zofran, 4 mg of Decadron, 1000 mg of Ofirmev, and 30 mg of Toradol.

The operative report indicates that Mr. Thomas tolerated the procedure well and was taken to the recovery room in good condition. During recovery, additional medications were dispensed to Mr. Thomas.

At 11:55 a.m., Mr. Thomas was administered 25 mg of Demerol for shivering management. At 12:05 p.m., Mr. Thomas woke up in severe pain. The nurses' notes indicate that orders were taken from Dr. Baudoin regarding pain medication. At 12:05 p.m. and 12:07 p.m., Mr. Thomas was given 5 mg of Morphine. Another nerve block of 100 mg of Ropivicaine was administered. At 12:10 p.m., 12:12 p.m., 12:15 p.m., and 12:17 p.m., Mr. Thomas was given 1 mg of Dilaudid. Mr. Thomas received 2 mg of Versed at 12:20 p.m. for the second block. It was observed that he was sedated at 12:25 p.m. He then received 0.2 mg of Romazicon at 12:40 p.m. for a reversal. At 1:02 p.m., the airway was removed and it was noted that Mr. Thomas was feeling better. He was discharged at 1:50 p.m. into the care of his parents.

The anesthesia discharge notes indicate that Mr. Thomas was alert and oriented and able to sit up and stand without dizziness or significant change in vital signs. Mr. Thomas was instructed to use an EB ice machine as needed, an arm sling, and place no weight on the right arm. It was noted that Mr. Thomas was given a prescription for Hydrocodone at the doctor's office before surgery and this

medication was to be used at home for pain. The notes indicate that the patient and family were unsure of the dose, but the prescription was at home once needed.

Later that evening at 7:48 p.m., an ambulance was called to the Thomas home because Mr. Thomas was unconscious. The ambulance records indicate that Mr. Thomas's mom had given one Oxycodone. He was given Narcan but did not respond. He was intubated through his nose and transferred to the emergency room. According to the petition, Mr. Thomas fell into a coma for five days following his release and lost the use of his left side. A medical review panel opinion rendered on May 26, 2016, found that "[a]ll parties involved met the standard of care."

On August 26, 2016, Mr. Thomas filed suit against Dr. Drew. He also sued the anesthesiologist, Lafayette Surgicare, Lafayette Surgery Center, and The Regions Health System of Acadiana. Mr. Thomas claims the surgery and post-surgical care required extensive anesthesia and heavy narcotic medication. He claims that he was released too early following his surgery and went into a coma for five days causing a brain injury.

Dr. Drew filed a motion for summary judgment on February 15, 2017. A hearing on the motion was held on May 15, 2017. The trial court granted Dr. Drew's motion and dismissed all of Mr. Thomas's claims against Dr. Drew. Mr. Thomas then filed the present appeal.

## SUMMARY JUDGMENT

In support of his motion for summary judgment, Dr. Drew offered the medical review panel opinion which unanimously found that he met the applicable standard of care in his treatment of Mr. Thomas. Mr. Thomas opposed the motion for summary judgment with the affidavit of Dr. Albert Gros, an anesthesiologist and pain management physician, who opined that "[t]he patient was not monitored

long enough prior to discharge from the Recovery Room at Lafayette Surgery Center." Dr. Drew argued that Dr. Gros is not qualified to render an opinion on whether or not Dr. Drew breached the standard of care of an orthopedic surgeon in his treatment of Mr. Thomas. In his motion for summary judgment, Dr. Drew further argued that Mr. Thomas did not offer any expert testimony that Dr. Drew's alleged breach caused or contributed to any injury damages sustained by Mr. Thomas.

Mr. Thomas first claims that Dr. Drew failed to follow the proper procedural requirements for objecting to the admissibility of Dr. Gros's expert opinion. Citing *Adolph v. Lighthouse Prop. Ins. Corp.*, 16-1275 (La.App. 1 Cir. 9/8/17), 227 So.3d 316, Mr. Thomas argues that the only proper procedure to challenge the qualifications of an expert affidavit filed in opposition to a motion for summary judgment is pursuant to La.Code Civ.P. art. 1425. Mr. Thomas claims that Dr. Drew was required to assert a *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993), challenge or motion in limine contesting the qualifications of Dr. Gros. Mr. Thomas claims the trial court erred in failing to conduct a *Daubert* hearing before excluding the testimony of Dr. Gros.

*Adolph*, 277 So.3d 316, held that a defendant could no longer challenge the qualifications of the plaintiffs' expert by way of a motion to strike after La.Code Civ.P. art. 966(D)(2) was amended by Acts 2015, No. 422, § 1, effective January 1, 2016. Now La.Code Civ.P. art 966 (D)(2) provides that "[a]ny objection to a document shall be raised in a timely filed opposition or reply memorandum." "Louisiana Code of Civil Procedure article 1425(F) sets out in detail the procedure which should be followed in order to challenge the qualifications of an expert or the methodology used by the expert in reaching his opinion." *Adolph*, 227 So.3d at 320.

4

Dr. Drew did challenge the qualification of Dr. Gros in his reply memorandum. Therefore, he followed the proper procedure pursuant to La.Code Civ.P. art. 966(D)(2) in objecting to Dr. Gros's affidavit. We do agree with Mr. Thomas that in deciding whether to admit an expert opinion affidavit at the summary judgment stage, the *Daubert* standards should be considered by the trial court in determining whether the expert is qualified to render an opinion. *Independent Fire Ins. Co. v. Sunbeam Corp.*, 99-2181, 99-2257 (La. 2/29/00), 755 So.2d 226.

At the hearing on the motion for summary judgment, defense counsel extensively discussed the applicability of the *Daubert* analysis in a summary judgment proceeding. A reading of the transcript indicates that the trial court considered the qualifications of Dr. Gros regarding his ability to testify about the duty of care owed by Dr. Drew. We find that the trial court conducted a *Daubert* analysis regarding Dr. Gros's qualifications "as an expert witness on the issue of whether the physician departed from accepted standards of medical care." La.R.S. 9:2794(D)(1).

Mr. Thomas next argues that the fact that Dr. Gros is not an orthopedic surgeon is not dispositive of the issue of his ability to testify as an expert in this matter. He further argues that Dr. Gros's affidavit creates a genuine issue of material fact prohibiting summary judgment.

In reviewing the grant of summary judgment, an appellate court conducts a de novo review using the same standards that the trial court used in making its determination. *Domingue v. Louisiana Guest House*, 17-633 (La.App. 3 Cir. 12/6/17), ___ So.3d ___. Summary judgment is favored and "designed to secure the just, speedy, and inexpensive determination of every action." La.Code Civ.P. art. 966(A)(2). "[A] motion for summary judgment shall be granted if the motion,

5

memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

It is the mover's burden of proof. La.Code Civ.P. art. 966(D)(1). However, if the mover will not bear the burden of proof at trial, then the mover does not have to negate all essential elements of the adverse party's claim but only has to point out "the absence of factual support for one or more elements essential to the adverse party's claim." *Id.* The burden then shifts to the adverse party to produce factual support to establish a genuine issue of material fact that mover is not entitled to judgment. *Id.*

In a medical malpractice action, the plaintiff must establish:

(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, optometrists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and **where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, optometrists, or chiropractic physicians within the involved medical specialty**.

(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.

(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

La.R.S. 9:2794(A) (emphasis added).

Pursuant to La.Code Civ.P. art. 967(A), "supporting and opposing affidavits of experts may set forth such experts' opinions on the facts as would be admissible in evidence under Louisiana Code of Evidence Article 702, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

Louisiana Revised Statutes 9:2794(D)(1) sets forth the qualifications an expert must possess in order to qualify to testify about a physician's breach of the standard of care owed to the plaintiff in a medical malpractice action:

> (a) He is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose.

> (b) He has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim.

> (c) He is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of care.

> (d) He is licensed to practice medicine by the Louisiana State Board of Medical Examiners under R.S. 37:1261 et seq., is licensed to practice medicine by any other jurisdiction in the United States, or is a graduate of a medical school accredited by the American Medical Association's Liaison Committee on Medical Education or the American Osteopathic Association.

La.R.S. 9:2794(D)(1).

In *Hebert v. Podiatry Insurance Co. of America*, 96-567, p.10 (La.App. 3 Cir. 10/9/96), 688 So.2d 1107, 1113, *writs denied*, 96-2726, 96-2728 (La. 1/6/97), 685 So.2d 117 (citations omitted), this court discussed the admissibility of an expert's opinion regarding the standard of care in a medical malpractice case as follows:

> Where the alleged negligent acts raise issues which are limited and peculiar to the medical specialty involved, only those who are qualified in that specialty may testify as to the applicable standards. However, "it is a specialist's knowledge of the requisite subject matter, rather than the specialty within which the specialist practices, which determines whether a specialist may testify as to the degree of care which should be exercised;" Where medical specialties overlap, a specialist in one field can testify as to the standard of care applicable to a procedure which is common to both disciplines, where there is no proof that the standard of care is different in each discipline. The party offering the expert must prove the witness' training, expertise, and skill in the procedure. The determination of an expert's qualifications to testify as to the standard of care must be made on a case-by-case basis.

*See also Lejeune v. Louisiana Med. Mut. Ins. Co.*, 13-845 (La.App. 3 Cir. 2/12/14), 153 So.3d 1021, *writ denied*, 14-519 (La. 4/25/14), 138 So.3d 646; *Richardson v. Cotter*, 51,637 (La.App. 2 Cir. 9/27/17), ___ So.3d ___.

In the present case, the alleged malpractice did not involve any issue peculiar to orthopedic surgery. Rather, Mr. Thomas argues that the malpractice occurred in his post-operative care and release. Therefore, we agree with Mr. Thomas that an expert in orthopedic surgery was not required. However, even if we were to find that Dr. Gros is qualified to offer an opinion as to whether Dr. Drew breached the standard of care regarding Mr. Thomas's post-operative care, we find that Dr. Gros's affidavit is insufficient to establish that Dr. Drew breached the standard of care.

Dr. Gros never states what standard of care was owed to Mr. Thomas by Dr. Drew post-operatively or that Dr. Drew breached any standard of care at all in his care of Mr. Thomas. Dr. Gros never even mentions Dr. Drew in his affidavit. He simply makes a conclusory statement about Mr. Thomas's post-operative care. Affidavits that are conclusory with no supporting underlying facts are legally insufficient to defeat a motion for summary judgment. *Baez v. Hosp. Serv. Dist. No. 3 of Allen Parish*, 16-951 (La.App. 3 Cir. 4/5/17), 216 So.3d 98.

We agree with the trial court's decision to grant Dr. Drew's motion for summary judgment. Dr. Drew established through the medical review panel opinion that he did not breach the standard of care owed to Mr. Thomas. Mr. Thomas failed to produce any expert testimony as to the standard of care Dr. Drew owed him post-operatively and that Dr. Drew breached that standard of care.

For these reasons, the judgment of the trial court granting Dr. Drew's motion for summary judgment and dismissing Mr. Thomas's claims against Dr. Drew is affirmed. Costs of this appeal are assessed against Justin Thomas.

**AFFIRMED.**