NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

18-459

RICHEY MENARD, ET AL.

VERSUS

THE REGIONAL HEALTH SYSTEM OF ACADIANA, LLC, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-2017-3833
HONORABLE DAVID SMITH, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Elizabeth A. Pickett, John E. Conery, and Candyce G. Perret, Judges.

AFFIRMED.

R. Scott Iles
Attorney at Law
Post Office Box 3385
Lafayette, LA 70502-3385
(337) 234-8800
COUNSEL FOR PLAINTIFF-APPELLANT:
    Richey Menard, Individually and on behalf of his daughter,
    Aubrey Menard

**Marc W. Judice**
**J. Ryan Pierret**
**Judice & Adley (A Professional Law Corporation)**
**Post Office Drawer 51769**
**Lafayette, LA 70505-1769**
**(337) 235-2405**
**COUNSEL FOR DEFENDANT-APPELLEE:**
    **Dr. Keith Strain**

**Pickett, J.**

The plaintiff in this medical malpractice litigation appeals the trial court's grant of summary judgment in favor of one of the defendants. We affirm.

**FACTS**

On June 9, 2014, Aubrey Menard, fourteen months of age, presented to the emergency room (ER) at Women's and Children's Hospital (WCH) accompanied by her grandmother and mother. Her grandmother related that Aubrey had been vomiting for two days and had fever of 100 degrees. The grandmother also stated that Aubrey had a bump on her left knee and that she had quit walking a couple of days before that day. Aubrey's mother reported to Valerie Louviere, R.N., that Aubrey had vomited five times since the previous night and had a temperature of 100.

Nurse Louviere performed an initial assessment and noted that Aubrey was awake, alert, fussy, hard to console, and vomiting clear fluid during her examination. She conducted a neurological examination on Aubrey and found that Aubrey's responses were within defined parameters.

Dr. Keith Strain then examined Aubrey, noting that she appeared acutely dehydrated, was fussy, and had somewhat dry mucous membranes. He also examined the mass in the tissue next to her left knee which he determined was approximately one centimeter in size. Dr. Strain further noted that Aubrey refused to put her legs down when picked up to see if she would walk. He testified that he did not perform a detailed neurological examination because her presenting problem was acute gastroenteritis. He explained, however, that he did perform a neurological examination on Aubrey and found no abnormalities.

Dr. Strain ordered blood work and an x-ray of Aubrey's left knee. The blood work results showed only that Aubrey was dehydrated; the x-ray revealed no

acute fracture or bony abnormality. Dr. Strain diagnosed gastroenteritis and dehydration. He ordered IV hydration and Zofran to relieve Aubrey's nausea. Dr. Strain later re-evaluated Aubrey, finding that she had improved and was drinking fluids without vomiting. He discharged her with a prescription for Zofran that dissolves on the tongue and instructions for her mother to follow up with Aubrey's primary care provider and to return to the ER if vomiting was not controlled with Zofran.

Twenty-four hours later, on June 10, 2014, Ms. Menard returned with Aubrey to WCH's ER and reported that Aubrey had continued vomiting after she returned home the previous day. She reported that Aubrey spit out the Zofran and would not take it. According to Ms. Menard, Aubrey was no better and was listless at home. On exam, Nurse Louviere found Aubrey to be awake, alert, and oriented to her mother. Nurse Louviere noted that Aubrey was fussy during her assessment but was easily consoled by her mother. Nurse Louviere also noted that Aubrey was not listless and that she stood on the scale without difficulty. She conducted a neurological examination, noting the results were within defined parameters.

Dr. Tomas Golan examined Aubrey on this visit. He also conducted a neurological examination on Aubrey and found her responses normal. Dr. Golan ordered IV hydration and Zofran to relieve Aubrey's symptoms. He reevaluated Aubrey later at which time he admitted her to WCH in outpatient status with a diagnosis of vomiting and dehydration.

On June 11, 2014, Aubrey was admitted to the pediatric service with a chief complaint of vomiting and dehydration. Not long after being admitted, she suffered from profound neurological deterioration, followed by acute respiratory failure. A CT scan of Aubrey's head revealed a brain tumor and massive cerebral

2

edema. Dr. Darric Baty, a pediatric neurosurgeon, was consulted. He performed a ventriculostomy to relieve the pressure on Aubrey's brain. After the pressure in Aubrey's brain subsided, Dr. Baty performed a craniotomy to remove the brain tumor. After recovering from surgery, Aubrey suffered some permanent neurological impairment.

Richey Menard, Aubrey's father, individually and on behalf of Aubrey, filed a complaint with the Commissioner of Administration as provided in the Medical Malpractice Act. La.R.S. 40:1231.1 to 40:1231.10. The medical review panel determined that the treatment provided by the named health care providers met the applicable standards of care. Mr. Menard then filed suit against Dr. Strain, Dr. Golan, and WCH, alleging that their care and treatment of Aubrey in the ER June 9, 10, and 11, 2014, fell below the standard of care applicable to each of them and that Aubrey suffered additional brain damage or the loss of a better chance of recovery because of their substandard care.

In January 2018, the defendants filed motions for summary judgment. After hearings were held on the motions, the trial court granted judgments dismissing Mr. Menard's claims against all of the defendants. Mr. Menard appealed only the judgment dismissing his claims against Dr. Strain.

**DISCUSSION**

Mr. Menard assigns one error with the trial court's grant of summary judgment: the trial court failed to find that Ms. Menard's affidavit and the testimony of Dr. Toni Leoni create a genuine issue of material fact which precludes summary judgment herein.

Appellate courts review a judgment granting a motion for summary judgment de novo, using the same standard as the trial court. *Thomas v. Drew*, 17-818 (La.App. 3 Cir. 3/7/18), 240 So.3d 980. A defendant who does not bear the

3

burden of proof at trial need only show "the absence of factual support for one or more elements essential to the adverse party's claim" to successfully support its motion for summary judgment. La.Code Civ.P. art. 966(D)(1). The burden of proof then shifts to the non-moving party "to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id.*

To succeed with a medical malpractice claim, the plaintiff must show the standard of care applicable to the defendant, that the defendant breached that standard of care, and that the breach caused an injury to the plaintiff. La.R.S. 9:2794(A). As a general rule, expert testimony is required to prove the standard of care, a breach thereof, and causation. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So.2d 880. Expert testimony is not required, however, when the issues presented "are such that a lay jury can perceive negligence in the charged physician's conduct as well as any expert can, or . . . the defendant/physician testifies as to the standard of care and there is objective evidence, which demonstrates a breach thereof." *Pfiffner v. Correa*, 94-924, pp. 9-10 (La. 10/17/94), 643 So.2d 1228, 1234. "Expert testimony is also required to establish causation unless the causal connection between the breach of the standard and the plaintiff's damages are obvious." *Rogers v. Hilltop Ret. & Rehab. Ctr.*, 13-867, p. 8 (La.App. 3 Cir. 2/12/14), 153 So.3d 1053, 1060.

A defendant in a medical malpractice action does not bear the burden of proof at trial. Therefore, Dr. Strain is only required to point out the absence of factual support for any one of the three elements of this medical malpractice claim. *Id*.

To support his motion for summary judgment, Dr. Strain introduced the report of the medical review panel in which the three physician panel members

4

found no breach in the standard of care owed to Aubrey by any defendant. He also introduced excerpts of his deposition testimony, the deposition testimony of the other named defendants, and members of the medical review panel.

Dr. Strain testified that, although he failed to document it, he performed a neurological examination on Aubrey when he treated her. He explained that he did not perform a detailed neurological examination because the grandmother's chief complaints regarding Aubrey were vomiting and the bump on her knee and because she looked dehydrated. Dr. Strain further explained that Aubrey responded appropriately during his neurological examination of her and that he remembered performing the neurological examination because "he hadn't felt a bump like [the one on Aubrey's knee] before." Dr. Strain's testimony is uncontradicted and supported by Nurse Louviere's documented finding that her neurological examination of Aubrey was normal.

Dr. Toni Leoni, a pediatrician who was a member of the medical review panel, testified that under the facts of this case, the applicable standard of care required Dr. Strain to perform a neurological examination on Aubrey. She noted that the panel would have preferred that Dr. Strain's neurological examination be documented in Aubrey's records but clarified that because he did perform the examination he did not breach the applicable standard of care.

Dr. Lori McBride, a pediatric neurologist who served on the medical review panel, explained that pediatric patients with brain tumors present with very nonspecific symptoms. Dr. McBride testified that the examination performed by Dr. Strain revealed no indicia that a radiological study of Aubrey's brain should have been ordered.

Dr. Baty, Aubrey's surgeon, testified that he could not say Aubrey would have suffered less neurological damage if he had performed her surgery two days

5

earlier because nothing established when the pressure in her brain increased. He explained that it is hard to know whether the pressure shown on radiographs taken of Aubrey's brain occurred spontaneously immediately before he was contacted or was present before that time. Dr. Baty further explained that Aubrey's continued vomiting could have contributed to the increased pressure in her brain. Importantly, Dr. Baty testified that he did not have appropriate information to opine whether Aubrey would have suffered less brain damage if the procedures he performed had been performed on June 9. Mr. Menard did not present any evidence on causation.

Dr. Strain's evidence established that he did not breach the applicable standard of care and that there is no evidence to establish whether his treatment caused Aubrey damage. Therefore, the burden shifted to Mr. Menard to show that a genuine issue of material fact exists as to whether Dr. Strain is entitled to summary judgment.

Mr. Menard argues that Ms. Menard's affidavit and a short excerpt from Dr. Leoni's deposition testimony create genuine issues of material fact that preclude summary judgment. He first contends that Dr. Leoni's testimony establishes that Dr. Strain breached the standard of care when he examined Aubrey. Dr. Leoni testified that because Aubrey had reportedly quit walking a couple of days before Dr. Strain examined her "it would have been nice to have a neurologic exam documented." Pursuant to further questioning by counsel for Mr. Menard, Dr. Leoni agreed "nice [is] a code word for the reasonable thing to do" and that the standard of care for a physician is "doing what's reasonable under the circumstances and what other doctors [in that specialty] would do." As discussed above, Dr. Leoni later clarified, however, that the applicable standard of care required Dr. Strain to perform a neurological examination, which he did. The

6

standard of care did not require him to document that he performed the examination.

Mr. Menard argues that Dr. Strain's testimony creates a genuine issue of material fact because it presents a credibility issue that should be resolved a trier of fact, not the court on summary judgment. We do not agree because Nurse Louviere's testimony also establishes that Aubrey's neurological examination was normal.

Mr. Menard does not address the essential element of causation; he urges that causation is not before the court. Contrary to this claim, Dr. Strain asserts in his motion for summary judgment that Mr. Menard has the burden of proving that his treatment of Aubrey fell below the applicable standard of care *and* that his substandard care damaged Aubrey.

Mr. Menard did not rebut Dr. Baty's testimony that no evidence existed to establish that Aubrey would not have suffered neurological damage, or suffered less neurological damage, if he had performed surgery earlier than he did. Accordingly, Mr. Menard failed to establish an essential element of his claim, and Dr. Strain is entitled to judgment as a matter of law. The trial court did not err in granting Dr. Strain's motion for summary judgment.

## DISPOSITION

The trial court's grant of summary judgment in favor of Dr. Keith Strain dismissing all of Richey Menard's claims against him is affirmed. All costs are assessed to Richey Menard.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.

7