Judgment rendered April 13, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,205-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

JOSEPH THOMAS and                      Plaintiffs-Appellants
CAROLYN THOMAS

versus

HAROLD BAYONNE and                     Defendants-Appellees
ADVANCED SURGERY
CENTER OF NORTHERN
LOUISIANA, LLC

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2019-3833

Honorable Alvin R. Sharp, Judge

* * * * *

THE BRUSCATO LAW FIRM                  Counsel for Appellants
By:  John F. Bruscato

NELSON, ZENTNER, SARTOR                Counsel for Appellee,
& SNELLINGS, L.L.C.                    Harold Bayonne, MD
By:  F. Williams Sartor, Jr.

COOK, YANCEY, KING & GALLOWAY          Counsel for Appellee,
By:  Cynthia C.D.M. Anderson           Advanced Surgery Center
     Luke D. Whetstone                 of Northern Louisiana, LLC

* * * * *

Before PITMAN, STONE, and HUNTER, JJ.

**HUNTER, J.**

Plaintiffs, Joseph Thomas and Carolyn Thomas, appeal a district court judgment granting summary judgment in favor of defendant, Dr. Harold Bayonne. For the following reasons, we affirm in part, reverse in part, and remand this matter for further proceedings.

## FACTS

Plaintiff, Joseph Thomas, was a custodian at Carroll High School in Monroe, Louisiana. On June 13, 2016, the plaintiff slipped and fell while mopping the floor at the school. Plaintiff was treated at the Affinity Clinic for complaints of neck and shoulder pain. On June 14, 2016, plaintiff's pain worsened, and he went to the emergency room at St. Francis Medical Center. Radiological studies revealed plaintiff did not have any bone fractures or dislocations, and he was discharged home.

Plaintiff's pain did not subside. On June 30, 2016, he was examined by Dr. Brian Bulloch, an orthopedist at the North Louisiana Orthopedic and Sports Medicine Clinic. Dr. Bulloch ordered an MRI and physical therapy. The MRI was remarkable for mild diffuse cervical spondylosis and apophyseal joint hypertrophy, disk herniation at C4-5 with mild cord compression, slight bulging at C5-7 with mild central and foraminal stenosis, and mild C8 foraminal stenosis. Plaintiff began physical therapy on July 21, 2016; however, his pain did not improve.

By August 2016, plaintiff continued to experience pain and muscle spasms. In September 2016, Dr. Bulloch referred plaintiff to defendant, Dr. Harold Bayonne, an anesthesiologist, for the administration of a cervical epidural steroid injection ("CESI"). Plaintiff underwent the procedure at the Advanced Surgical Center of Northern Louisiana ("ASC") on September 22,

2016. When plaintiff awoke from anesthesia, he complained of sharp pain in his fingers, and the medical staff noted bleeding and swelling near the cervical injection site. Dr. Bayonne ordered pain and anti-anxiety medications and performed a brachial plexus block. Thereafter, plaintiff was discharged home.

According to plaintiff, his pain intensified in the following days and weeks; he also began to experience decreased sensation and mobility in his left hand. In November 2016, Dr. Bulloch suspected plaintiff was suffering from neuritis related to the CESI and referred him to Dr. Chad Domangue, a neurologist and pain management specialist, for an evaluation. After examining plaintiff, Dr. Domangue concluded plaintiff had suffered a spinal cord injury as a result of the CESI performed by Dr. Bayonne, and plaintiff had experienced "iatrogenic damage to his spinal cord from the epidural injection at C6-C7." Dr. Domangue also opined the damage was irreparable, and plaintiff's only treatment consisted of pain control. A subsequent MRI revealed plaintiff had cord compression at the C4-5 level.

On September 21, 2017, plaintiff filed a request for a medical review panel. Plaintiff alleged Dr. Bayonne committed the following acts: failed to properly examine, diagnose, assess, and treat plaintiff; failed to order the appropriate tests and procedures; failed to consult specialty services; failed to comply with the appropriate standard of care; and failed to properly inform plaintiff. Additionally, plaintiff asserted ASC was vicariously liable for the conduct of Dr. Bayonne and the other employees who assisted in the procedure.

2

On September 16, 2019, the medical review panel determined the evidence did not support plaintiff's allegation Dr. Bayonne failed to meet the applicable standard of care. The panel concluded:

> On September 22, 2016, Mr. Thomas presented to Dr. Bayonne at the [ASC] for the administration of this [CESI]. Prior to the injection, Mr. Thomas signed a written consent agreeing for Dr. Bayonne to administer the [CESI], which consent disclosed the material risks of the injection.
> ***
> All care and treatment rendered by Dr. Bayonne to Mr. Thomas was appropriate and within [the] standard of care.

The medical review panel also concluded ASC did not breach the applicable standard of care, stating as follows:

> All care and treatment rendered by the nurses and staff of [ASC] *** both before, during, and after the [CESI] was administered to Mr. Thomas by Dr. Bayonne was within [the] standard of care. The nurses and staff appropriately monitored Mr. Thomas after the injection and kept Dr. Bayonne informed of Mr. Thomas' condition.

Subsequently, on December 13, 2019, plaintiff filed a lawsuit against Dr. Bayonne and ASC, alleging, *inter alia*: plaintiff suffered severe damage as a result of the CESI; and notwithstanding the risks of the procedure, defendants breached the applicable standards of care by failing to avoid injuring plaintiff's spinal cord during the procedure. Plaintiff asserted claims for past, present, and future physical injuries, physical pain and suffering, mental anguish and emotional distress, medical expenses, loss of enjoyment of life, loss of wages and/or earning capacity, and other damages proven at trial. Plaintiff's wife, Carolyn Thomas, asserted a claim for loss of consortium.

On May 14, 2020, plaintiffs propounded the first set of discovery requests to Dr. Bayonne, and he answered on July 28, 2020. The discovery requests and answers were as follows:

<u>REQUEST FOR ADMISSION NO. 1</u>:
Admit that you do not possess fluoroscopic imaging taken from
Joseph Thomas on September 22, 2016.

<u>RESPONSE TO REQUEST FOR ADMISSION NO. 1</u>:
Admitted.

<u>REQUEST OF ADMISSION NO. 2</u>:
Admit that you did not take fluoroscopic images of Joseph
Thomas on September 22, 2016.

<u>RESPONSE TO REQUEST FOR ADMISSION NO. 2</u>:
Denied.

On July 31, 2020, Dr. Bayonne filed a motion for summary

judgment.[1] Thereafter, on August 4, 2020, plaintiff sent the following

discovery request to Dr. Bayonne:

<u>INTERROGATORY NO. 1</u>:
If you took fluoroscopic imaging from Mr. Thomas at the time
of the procedure, explain why you do not possess the
fluoroscopic images.

On September 9, 2020, Dr. Bayonne responded as follows:

<u>RESPONSE TO INTERROGATORY NO. 1</u>:
This question would better be addressed to Advanced Surgery
Center.

Thereafter, plaintiff sent the following discovery request to Dr. Bayonne:

<u>INTERROGATORY NO. 1</u>:
State the number of cervical epidural steroid injection
procedures you performed in the month of September 2016.

Dr. Bayonne did not respond to the question regarding the number of CESIs

he performed in September 2016.

On August 25, 2020, plaintiffs filed a motion to continue the hearing

on the summary judgment.[2]  On September 22, 2020, plaintiffs filed an

---

[1] ASC filed a motion for summary judgment on May 19, 2021.  That motion is not
at issue in this appeal.

[2] The hearing on the motion for summary judgment was continued and reset for
October 12, 2020.

opposition to defendant's motion for summary judgment, arguing genuine issues of material fact precluded summary judgment. Attached to the opposition, plaintiffs submitted an affidavit from Dr. Domangue, in which he attested, in pertinent part:

***

I have reviewed the Medical Review Panel's decision *** and the medical records associated with the treatment of Mr. Thomas. I have also provided treatment to Mr. Thomas. In my opinion and experience as a Pain Management Specialist, I believe the Medical Review Panel's decision *** was erroneous. It is my opinion that the treatment rendered to Mr. Thomas by Dr. Harold Bayonne, Jr., and Advanced Surgery Center of Northern Louisiana LLC deviated from the standard of care for the treatment rendered to Mr. Thomas on September 22, 2016, concerning the cervical epidural steroid injection which ultimately said injection injured Mr. Thomas' spinal cord in the cervical region and that said injury and resulting associated symptoms were a direct result of the medical negligence of Dr. Harold Bayonne, Jr., and Advanced Surgery Center of Northern LLC.

***

On October 2, 2020, defendant filed a reply to plaintiffs' opposition and "Objection to Plaintiff's Expert Affidavit of Dr. Chad Domangue." Defendant argued the affidavit was conclusory and insufficient to defeat summary judgment because Dr. Domangue provided no factual basis or support for his opinion that defendants breached the applicable standard of care. Defendant also asserted, "There is no outstanding discovery." However, on the same date, defendant responded to a request for discovery.[3]

On October 7, 2020, plaintiffs filed a "Response to Reply Memorandum" and attached "Exhibit D-2," an opinion letter from Dr. Domangue. In the document, which was dated December 1, 2016, Dr.

---

[3] Defendant had previously responded to plaintiffs' discovery requests. However, the responses had been sent to the wrong address. During the hearing on the motion for summary judgment, defense counsel characterized his assertion there was no outstanding discovery as a "misstatement."

Domangue stated plaintiff "suffered a spinal cord injury from the [CESI] which is clearly seen from the MRIs[.]" Again, Dr. Domangue did not render any opinion as to the applicable standard of care and/or how Dr. Bayonne may have breached the standard of care.

On October 9, 2020, defendant filed a "Memorandum in Response to Plaintiffs' Surreply Memorandum and Objection to Plaintiffs' Exhibit D-2." Defendant argued the letter from Dr. Domangue was unauthenticated and, therefore, was insufficient evidence to defeat a motion for summary judgment.

Following a hearing, the district court granted Dr. Bayonne's motion for summary judgment. The court stated, in pertinent part:

> The central issue as the Court appreciates it, is whether or not the affidavit of plaintiff's doctor rises to the level or [is] sufficient to overcome the motion for summary judgment filed on behalf of the defense's doctor. The Court finds and concludes that the affidavit of plaintiff's doctor is conclusory in nature. We find that the basis for the conclusory statement is – and not present within the four corners of the affidavit. That in and of itself is insufficient to create a genuine issue as to any material fact relative in comparison to the findings of the medical review panel. The Court also notes that while counsel for the plaintiff indicates circumstances surrounding the discovery components, the Court is not convinced at this time *** that the position by the plaintiff is sufficient enough to overcome *** the otherwise well pleaded application for summary judgment. We believe that an opportunity or a period of time to conduct adequate discovery has presented itself and we believe that *** the documents that the plaintiff propounded to counsel for Dr. Bayonne [have] been responded to. The desire for other information kicks us back to the time period where opportunity for adequate discovery had presented itself. The defense is not required to sit and wait forever. They are perhaps obligated to move when their professional judgment says to move. And they've done that. The Court's going to find that there is an absence of any genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.
> ***

6

Subsequently, plaintiffs filed a motion for new trial, and the district court denied the motion. Plaintiffs have now appealed.

## DISCUSSION

Plaintiffs contend the district court erred in failing to consider the surreply memorandum and Exhibit D-2 filed in response to defendant's reply to the opposition to the motion for summary judgment. They argue the Louisiana Code of Civil Procedure "implies" the district court, in its discretion, may consider additional documents filed in support of, or in opposition to, a motion for summary judgment. Plaintiffs maintain defendant's reply to the opposition to the summary judgment asserted the affidavit of Dr. Domangue was insufficient. Thus, according to plaintiffs, the surreply and accompanying exhibit were necessary to address defendant's argument, and the district court should have considered the filing.

La. C.C.P. art. 966 provides, in pertinent part:

\*\*\*

B. Unless extended by the court and agreed to by all of the parties, a motion for summary judgment shall be filed, opposed, or replied to in accordance with the following provisions:
(1) A motion for summary judgment and all documents in support of the motion shall be filed and served on all parties in accordance with Article 1313 not less than sixty-five days prior to the trial.
(2) Any opposition to the motion and all documents in support of the opposition shall be filed and served in accordance with Article 1313 not less than fifteen days prior to the hearing on the motion.
(3) Any reply memorandum shall be filed and served in accordance with Article 1313 not less than five days prior to the hearing on the motion. No additional documents may be filed with the reply memorandum.

\*\*\*

La. C.C.P. art. 966(D)(2) provides:

7

> The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. Any objection to a document shall be raised in a timely filed opposition or reply memorandum. The court shall consider all objections prior to rendering judgment. The court shall specifically state on the record or in writing which documents, if any, it held to be inadmissible or declined to consider.

In *Crump v. Lake Bruin Recreation & Water Conservation Dist.*, 52,559 (La. App. 2 Cir. 4/10/19), 267 So. 3d 1229, *writ denied sub nom. Crump v. Lake Bruin Recreation*, 19-0753 (La. 9/17/19), 278 So. 3d 973, the plaintiff filed a personal injury lawsuit against the defendant. The defendants filed a motion for summary judgment and supporting affidavits. Thereafter, the defendant filed a motion to continue, asserting discovery was not yet complete. The plaintiff filed an opposition to the motion and a supporting affidavit; the plaintiff then filed a motion to continue the hearing arguing he had not received responses to discovery requests and needed additional time to find additional witnesses. The hearing on the motion for summary judgment was continued without date. Months later, the plaintiff noticed depositions of five fact witnesses. Subsequently, two days before the hearing on the motion, the plaintiff filed a motion for permission to file supplementary exhibits in opposition to the motion for summary judgment, particularly, the five depositions. The defendants opposed the motion to supplement. Following a hearing, the district court granted the defendants' motions for summary judgment. This Court affirmed, stating:

> A plain reading of this subsection is that summary judgment procedure will usually encompass three filings: a motion, an opposition, and a reply. There is no provision for a surreply or supplementary opposition. *Baez v. Hospital Service Dist. No. 3*, 16-951 (La. App. 3 Cir. 4/5/17), 216 So. 3d 98. A court may, in its discretion, permit a surreply to allow the opponent to contest matters presented for the first time in the mover's reply, if the surreply is filed within the delays of Art. 966B. *Dufour v.*

8

> *Schumacher Group of La. Inc.*, 18-20 (La. App. 3 Cir. 8/1/18),
> 252 So.3d 1023, *writ denied*, 2018-1456 (La. 11/20/18), 256
> So.3d 991. A surreply may not be used to correct an alleged
> mischaracterization or to reiterate arguments already made. *Id.*,
> citing *Nix El v. Williams*, 174 F.Supp.3d 87 (D.D.C. 2016).
> Crump's motion for permission to file a supplementary
> memorandum in opposition to MSJ alleged only that counsel
> wished to provide pinpoint citations to key testimony and
> exhibits. There is no assertion that the State raised, in its reply
> memorandum, new issues requiring a response. Moreover,
> Crump's motion was filed a mere two days before the
> scheduled hearing on the MSJs – after the deadline for the filing
> of final papers under Art. 966B(3) and on the same short notice
> that was rebuffed in *Dufour v. Schumacher Group, supra.* On
> this record, the district court did not abuse its discretion in
> denying leave of court to file the supplementary memorandum.

*Id.*, at 1234-35.

In the instant case, plaintiffs opposed defendant's motion for summary judgment by arguing discovery was ongoing, and a genuine issue of material fact existed. Plaintiffs attached the affidavit of Dr. Domangue, who opined Dr. Bayonne breached the applicable standard of care. In the surreply, plaintiffs argued a statement in defendant's reply to the opposition, *i.e.*, there was no outstanding discovery, was "false," and reiterated their argument the matter was "simply not ripe for summary judgment" because discovery was ongoing, and attached an unauthenticated letter signed by Dr. Domangue. Plaintiffs did not assert that Dr. Bayonne raised, in his reply memorandum, any new issues requiring a response.

Further, the plain language of La. C.C.P. art. 966(D)(2) permits the district court to consider only those documents filed *in support of* or *in opposition to* a motion for summary judgment. The article further provides the court may consider any documents *to which no objection is made*. In this case, Dr. Bayonne clearly raised an objection to plaintiffs' surreply and submission of the unsworn document from plaintiffs' expert. Therefore, we

9

find the district court did not abuse its discretion in failing to consider plaintiffs' surreply.

Further, even if the surreply was sufficient to address new issues requiring a response, Exhibit D-2 does not comply with La. C.C.P. art. 966(A)(4), which provides:

> The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions.

Unverified documents such as letters and reports submitted in support of or in opposition to motions for summary judgment are not self-proving and will not be considered as competent summary judgment evidence. *Harris v. Dunn*, 45,619 (La. App. 2 Cir. 9/22/10), 48 So. 3d 367, *writ denied*, 12-2234 (La. 11/10/12), 103 So. 3d 372; *Williams v. Memorial Med. Ctr.*, 03-1806 (La. App. 4 Cir. 3/17/04), 870 So. 2d 1044. A document which is not an affidavit or sworn to in any way, or which is not certified or attached to an affidavit, is not of sufficient evidentiary quality to be given weight in determining whether or not there remain genuine issues of material fact. Further, statements made in letters, rather than by affidavits, have no evidentiary value. *Premier Restaurants, Inc. v. Kenner Plaza Shopping Center, L.L.C.*, 99-1310 (La. App. 5 Cir. 8/29/00), 767 So. 2d 927. To allow unverified and/or unauthenticated documents to be considered would result in "all manner of worthless documents [to] magically somehow become admissible by virtue of merely stapling them to a motion for summary judgment." *Boland v. West Feliciana Parish Police Jury*, 03-1297 (La. App. 1 Cir. 6/25/04), 878 So. 2d 808, *writ denied*, 04-2286 (La. 11/24/04), 888 So. 2d 231. Therefore, documents other than deposition excerpts and

10

affidavits cannot be considered because they are not purported to be "[s]worn or certified copies" in compliance with La. C.C.P. art. 967. *Lejeune v. Louisiana Med. Mut. Ins. Co.*, 13-845 (La. App. 3 Cir. 2/12/14), 153 So. 3d 1021, *writ denied*, 14-519 (La. 4/25/14), 138 So. 3d 646.

In this case, as stated above, plaintiffs attached Exhibit D-2 to the surreply. That document was a letter signed by Dr. Domangue, dated December 1, 2016, in which he opined Mr. Thomas "suffered a spinal cord injury from the [CESI]." However, the document is unauthenticated and does not fall into any of the categories set forth in Art. 966(A)(4). Consequently, we find the district court did not abuse its discretion in finding inadmissible plaintiffs' Exhibit D-2.

Plaintiffs also contend the district court erred in granting summary judgment in favor of Dr. Bayonne. Plaintiffs argue Dr. Domangue's affidavit was sufficient to create a genuine issue of material fact. Plaintiffs also claim any alleged insufficiency in the affidavit was caused by Dr. Bayonne's failure to produce the fluoroscopic images taken during the CESI. According to plaintiffs, the images are necessary to enable Dr. Domangue to render a definitive opinion as to how Dr. Bayonne breached the applicable standard of care. Plaintiffs concede they have been unable to ascertain "exactly what Dr. Bayonne did wrong"; however, they assert the inability was caused by Dr. Bayonne's actions of withholding or destroying "the evidence that would establish exactly what happened." Plaintiffs also argue Dr. Bayonne failed to respond to the request for the number of CESI procedures he performed during the year of 2016, which would have assisted their expert in determining Dr. Bayonne's proficiency in performing the procedure.

11

Dr. Bayonne concedes he misstated there was no outstanding discovery in his motion for summary judgment. However, he argues plaintiffs' allegation that he deliberately withheld or destroyed evidence to prevent Dr. Domangue from viewing the fluoroscopic images is untrue. According to Dr. Bayonne, the only outstanding discovery request pertained to the number of CESIs Dr. Bayonne had completed in September 2016. He argues a response to that inquiry "would not impact the sufficiency, or lack thereof, of Dr. Domangue's affidavit[.]"

Appellate courts review motions for summary judgment *de novo*, using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. *Larson v. XYZ Ins. Co.*, 16-0745 (La. 5/3/17), 226 So. 3d 412; *Peironnet v. Matador Res. Co.*, 12-2292 (La. 6/28/13), 144 So. 3d 791. The summary judgment procedure is favored and designed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2).

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The requirement in La. C.C.P. art. 966(A)(3) that a summary judgment should be considered only after "an opportunity for adequate discovery" has been construed to mean that there is no absolute right to delay action on a motion for summary judgment until discovery is complete; rather, the requirement is only that the parties have a fair opportunity to carry out discovery and to present their claim. *John River Cartage, Inc. v. Louisiana Generating, LLC*, 20-0162 (La. App. 1 Cir. 3/4/20), 300 So. 3d 437;

12

*Primeaux v. Best Western Plus Houma Inn*, 18-0841 (La. App. 1 Cir. 2/28/19), 274 So. 3d 20.

When addressing the adequacy of discovery on a motion for summary judgment, courts take into consideration the following relevant factors: (1) whether the party was ready to go to trial; (2) whether the party indicated what additional discovery was needed; (3) whether the party took any steps to conduct additional discovery during the period between the filing of the motion and the hearing on it; and (4) whether the discovery issue was raised in the trial court before the entry of the summary judgment. *Francois v. Ports Am. Louisiana, L.L.C.*, 20-0440 (La. App. 4 Cir. 3/10/21), 314 So. 3d 894, 898, *writ denied*, 21-00496 (La. 6/1/21), 316 So. 3d 830; *Laforge v. Golden Nugget Lake Charles, LLC*, 20-110 (La. App. 3 Cir. 11/4/20), 307 So. 3d 307; *Roadrunner Transp. Sys. v. Brown*, 17-0040 (La. App. 4 Cir. 5/10/17), 219 So. 3d 1272. In addition to these four factors, courts have considered whether the ability to conduct discovery was hampered by circumstances beyond the opponent's control. *Laforge*, *supra*; *Roadrunner*, *supra*. The abuse of discretion standard is used to determine whether the trial court allowed adequate time for discovery. *Mitchell v. Terry*, 20-527 (La. App. 3 Cir. 5/5/21), 319 So. 3d 451; *Whittington v. QBE Specialty Ins. Co.*, 12-409, (La. App. 3 Cir. 11/7/12), 105 So. 3d 797, *writ denied*, 12-2646 (La. 1/25/13), 105 So. 3d 723.

In the instant case, at the hearing on the motion for summary judgment, plaintiff's counsel stated additional discovery was necessary to provide Dr. Domangue with the information necessary to definitively identify how Dr. Bayonne breached the applicable standard of care. During oral arguments before this Court, both parties admit at the time the motion

for summary judgment was filed, discovery was ongoing and neither party was ready to proceed to trial. The parties also conceded a scheduling order had been neither sought nor obtained,[4] and counsel for Dr. Bayonne conceded he filed the motion as a mechanism to further enhance the discovery process. Further, both parties took steps to conduct additional discovery during the period between the filing of the motion and the hearing on the motion, and plaintiff raised the issue of discovery before the trial court entered the judgment on the motion.

## CONCLUSION

For the reasons set forth herein, we hereby affirm the district court judgment striking the plaintiffs' surreply and accompanying affidavit. We reverse the judgment granting summary judgment in favor of defendant, Dr. Harold Bayonne, and we remand this matter for further proceedings. Costs of the appeal are assessed to defendant, Dr. Harold Bayonne.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED.**

---

[4] Fourth Judicial District Court Local Rule Appendix 9.14 provides, in relevant part:

> After all parties have answered, made a general appearance, or had a preliminary default entered against them, any party or counsel may request in writing a scheduling/status conference with the civil judge of the assigned Section, by submitting a Return Date/Hearing Cover Sheet (Pink Slip)[.] *** Within thirty (30) days following receipt of a request for a scheduling conference, the civil judge of the assigned Section shall: (a) Schedule a conference for the purpose of setting such deadlines as the judge deems appropriate, and the judge shall issue a Scheduling Order which shall include a trial date; or, (b) Issue a Scheduling Order which shall include a trial date; and (c) Notify the parties that Court Reporters will not record civil proceedings unless requested by counsel or the Court. This notice may be given by reference to this Court Rule only.
> ***

14